David Markham, now my firm's Clark and Markham, on behalf of the appellants. Thanks for the promotion. We're just judges. The only justices in the federal system are on the Supreme Court. I'm sorry, Your Honor. And there is no justice in the Ninth Circuit, right, Aaron? Your Honors, I am going to reserve a little of my time at the end for rebuttal, if I may, and I'll try to be brief in going over my argument again last night. The first thing I did was try to find the history of this aspect of the unfair competition law, 17-200, of the Business and Professions Code. And it seems to be the youngest of these three prongs of 17-200, the unlawfulness prong, as distinguished from the deceptive or unfair prong. That's the prong you're using, the unlawfulness prong of 17-200. That is correct, Your Honor. And it dates, although the unfair competition law is sometimes called the Mini-FTC Act, and it goes way, way back in its predecessor versions, the current unlawfulness language dates, as far as I can tell, from the early 60s, 1963. And it is what I think the case law is called derivative, in that it borrows other statutory or regulatory violations. But the first time I can see it being settled in California jurisprudence that one of the bodies of law and regulation that can be borrowed is TILA, is in the mid-1970s, in the California Supreme Court's decision in a case called Churn, C-H-E-R-N, versus Bank of America. But since then, at least as far as the California substantive law of 17-200 is concerned, it seems to have been settled. That one of the provisions of law that may be borrowed derivatively is the Truth in Lending Act. That being the case, if in sort of the guts of the thing, 17-200 means that businesses in the state must comply with the laws, including truth in lending, comply with the federal regulatory law. I, just from sort of a conceptual or logical point of view, don't see any conflict in the sense of conflict preemption under Article VI and the Supremacy Clause, and in the sense that all the state law says is to businesses go forth and comply with the federal law and the regulation. This is not a case like the ATM fee case where a municipal government or a state government might place a cap or some limit that's different expressly. Isn't your problem not the abstract possible conflict, but the actual regulations, the federal regulations that say, let me read you the, what is it, the example of disclosure in advertising? Including laws requiring specific statements, et cetera. That's what you're up against. That's the federal government preempting the field. Well, then if there's not express preemption by conflict or express preemption, then there's, I think, Your Honor, what you're talking about is what's called field preemption. Right. But if the state law is simply saying whatever the federal government has determined in this field, businesses must also comply with, then... You might comply within the federal statute of limitations, but you're trying to get piggyback on the federal law and use the California statute of limitations, and you've got to deal with these federal regulations. Let's say what you have in hand is not open to state regulation. Well, but, Your Honor, if the only conflict is in the statute of limitations... No, no, but what's the conflict is they say we're preempting the field. You say, no, but I want to come into that field. Your field preempted out. But, Your Honor, if the state law is simply saying go forth and comply with the federal law, then what state law has simply done is provide an additional... Yeah, but it's not open to the state to do that. The feds have taken it over. And certainly you can't say, well, the feds have taken it over, but we'll do an end run and get a state statute of limitations. I mean, that's absurd. Your Honor, I think that in terms of substantive conduct, the only possible head-to-head dead-bang conflict in this case between the areas is in the different length of time in the statute of limitations that would be applied. You want to minimize that. That reminds me of the Emperor of Japan when talking about the great relationship between Japan and the United States was asking, what about World War II? And he said, well, that was an unfortunate interlude in East-West relations. I mean, how can you minimize the difference between one and four years? The federal government has said one year. And you're trying to sneak through the back door, and I don't mean that derogatorily, but to extend the statute to four years for TILA. I don't think I really want to minimize it, but my point is that if the conflict is the procedural limitations period only, then that is not a substantive area of law. In straight language, so what? Statute of limitations is not an incidental problem. It's something that's real. It's one year, and that has dramatic effect on a business. If they're exposed for four years to 50 different state laws, for example, under your theory, for four years instead of TILA for one, that's a pretty big jump, isn't it not? Your Honor, I think that in looking at the authorities and the precedent, a statute of limitations period is not for business conduct. And let me explain what I mean by that. Let's assume, if you think back to the days before you were on the bench, and a client, a mortgage lender, had contacted you and said, I need some advice here on these upfront deposits on my mortgage applications. Is it legal under TILA to keep the money if the customer backs out, or is it not? We would look at the TILA statute, Sections 1635 of Title 15, and advise, as part of the TILA Statute of Limitations, as to whether or not to keep the money. And we would say to the practitioners, to the board or management or whomever it is, it's lawful or it's unlawful. The idea that management then, having the advice of counsel, would sit back and say, okay, well, here's what we're going to do. This is a construct, the premise, I just don't accept any of your premises. You have TILA, right? Yes. Bring it within one year, no problem, right? Correct, Your Honor. Okay, so that should be the end of it. And you're just trying to figure out a way to extend the federal statute of limitations to four years. But we're taking a very important part of California's unfair competition law, its borrowing provision, and saying that because Congress has also regulated in this area, by implication, the state is not allowed in. But there are all kinds of state consumer protection laws, contract, commercial laws. The very mortgages and trust deeds themselves have clauses that say, this instrument shall be governed by the law of the local state. So that on the narrow question of where the conflict is, per se, which is the difference in the limitations period, I respectfully submit, Your Honor, that under our lending practices, we might have a TILA violation here, and we might have a violation of a RESPA provision. But here's what we will... Are you saying that this conflict is just incidental, as it involves the Truth in Lending Act? It doesn't affect... And it doesn't... You're just saying that under federal law, what they did here was illegal. Yes. And it's illegal under state law. And you have the Code of Federal Regulations, 560.2c, tells us that laws are not preempted to the extent that they only... Incidentally affect the lending operation of a federal savings and loan. So what you're saying is that by allowing the four years instead of the one year, that that is only an incidental effect. Because these people are supposed to run an honest business. And if they're running an honest business, they're not going to keep that $400. And they're not going to be interfering with the workings of the savings and loan. They're not going to get into what's a false or... I don't mean that. They're not getting into what's legal or illegal and all the rest of it. Yes, Your Honor. Is that what you're saying? Yes, Your Honor. Well, then why don't you just say that? But having said it, I wish you would deal with the regulation. Because we start out with the 560.2. OTS hereby occupies the entire field of lending regulation for Federal Savings Association. OTS intends to give Federal Savings Association maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. And then they do admit the incidental. But then they give you an example in nine, disclosure and advertising. Deal with that regulation. Why are you not preempted by that? Your Honor, because the OTS itself in interpreting 560, the section that you were just mentioning, has said that states... Is that in your brief? Yes, Your Honor, it is in the brief. What's the authority of an opinion letter? It's at least the OTS's reading as to where it's... Does it trump the regulation? And occupying of the field. Yes, it interprets 560, the whole regulation that talks about the OTS and Federal law preempting the field, except to the extent that the state regulation or conduct is only incidental to the... All right, but will you deal with example nine under the regulations? The case of false or deceptive advertising? Right. In that case, Your Honor, I think the whole section, the regulations themselves, talk about state contract commercial or tort law continuing to exist and not being preempted to the extent there are claims for false or misleading advertising. And the theory here is that if the lender is telling consumers, if you put up the deposit, we keep it, that's inconsistent with the basic underlying reality. Have you got nine in front of you? I'm flipping to it, Your Honor. Under 3560.2B. Have you got it? Almost, Your Honor, I'm getting there, I didn't tag it. Now, I read that and it's exactly the same kind of advertising you're complaining about. And it's explicitly preempted. I think not, Your Honor, because if subsection C, under 3560.2B. Well, you stick with nine for a minute. Why doesn't nine preempt you? I'm sorry, Your Honor, I'm still trying to find my, I may be looking in the wrong place for subdivision nine, subsection nine. I'm looking at 560.2B. Nine. And I get as far in the brief language that I'm looking at, but I'm not finding section nine. Well, did you cite it in your brief? I think we cited B and subsection C, B and C together for the proposition that state contract tort commercial law. Well, should we read you the language? Yes, Your Honor, if you would. Well, that seems to me to regulate disclosure. It does, Your Honor, but the theory of the unlawfulness prong is that is the section of federal law which is violated in the unlawfulness prong, which is then incorporated by the state. In other words, all we're saying is that at two levels. The underlying TILA section is violated when the money is kept, and the requirement of correct or accurate or truthful disclosure of whether or not the deposit is keepable is a violation of state law, borrowing the federal requirement of keeping the deposit. It's a violation of the federal requirement that laws be accurately and non-deceptively advertised. I'm not sure you're following me, Your Honor, but the concept is can there be a conflict or any injustice to the concept of field preemption if state law is saying comply with the federal regulation, as opposed to comply with state law. So really there are two aspects of the plaintiff's claim. The federal law, regardless of the disclosure, by simply telling the consumer we're keeping your deposit money, that in and of itself is a TILA violation when the money is kept. The second aspect is the deception in the disclosure that the deposit will be keepable if the customer doesn't follow through with the transaction. But the law, at least the authorities, are cited for the proposition that if businesses have to engage in or are required to engage in non-deceptive conduct, in other words, they can't deceive by making false statements about what the law is, that state tort statutory commercial law is what's carved out in the HOLA and the regulations in 560, so that states have always had the power, if there's false advertising or false disclosure, to regulate that conduct. In other words, it's a violation of state law to misrepresent what federal law is, is the point. Kennedy, Well, it says, you know, some of these sections aren't so easy to figure out. They give you these illustrative examples. It says, types of state laws preempted by paragraph 8 of this section include, without limitation, state laws purporting to impose requirements regarding, you know, disclosure and advertising, including laws requiring specific statements, information or other content to be included. And credit application forms. Is there any state law that requires disclosure and advertising specifically directed to savings and loans? And information in credit applications, credit solicitations, billing statements? There are a number of requirements of federal law, Your Honor, that are in the form of the disclosure statements, of which the three-day right of rescission required by TILA is one of them. But I don't think the state has a law that says inconsistently that there are different requirements or that businesses need not make that disclosure. The problem here is that the position that's being taken, what the disclosure is, is that it's a violation of federal law. And this is actually inconsistent with the federal law to the extent that the state will make it. Well, you look at, you go down to C, 11, let's see, I'm sorry. We go down to paragraph C. That's after you hit 13. It says state laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of federal savings associations or are otherwise consistent with the purposes of paragraph A of this section. They're talking about contract and commercial law. And I think tort law. And tort law. Also, Your Honor, and the OTS opinion letter I had been referring to before dealt with Indiana's deceptive trade practices statute. And the OTS at least had taken the position that the anti-deception provisions of that state law were not preempted in its field. Do you want to save a minute? Yes. And my only point, Your Honor, I didn't quite get to, and I guess I'll get down to 30 seconds, is that to the extent the business, the mortgage company is there saying, well, let's violate some regulations because they have a shorter statute than others, basically the underlying substantive rules in this case are not to keep the deposit money. That's what TILA actually required the mortgage company to do. And the idea that management is saying, well, let's violate some provisions. We'll violate TILA, but not RESPA because there may be a shorter statute and we'll just take the risk. I don't think that's what preemption is about. It's all those rules. You think the management sits around figuring out what the statute of limitations is? That's what I mean by the institution. Well, that's sort of a fiction, but go ahead. Well, but that's what I'm trying to think of the closest analogy in preparing for argument for the distinction between incidental and the direct regulation of a practice in processing an application or underwriting a mortgage loan. And the rule that management is supposed to follow is don't keep the deposit money. But to say if you do violate that rule and you don't say follow the advice of counsel, maybe you ought to do it because there's only a one-year statute as opposed to a four-year. What does their advertising say? I don't think — I think that in this case we found the web page that a consumer could go to, which is not — yes, it is a form of advertising that said the deposit is not refundable if the consumer doesn't follow through. But in the disclosure documents that were alleged in the pleading, that was the rule that was, we say, we allege, misstated, and which then was violated when the money was actually kept. So — Well, what does that form say that they signed? It says that if the consumer — and, again, I'm paraphrasing, but if the consumer does not follow through with the transaction — Yeah. — as a putbacks out or finds a better rate from some other lender, as opposed to the lending company rejecting the application because the credit score is too low or the income isn't properly verified. In that latter case, the deposit would have gone back. But if the consumer says, no, I'm going elsewhere, or this just isn't the time to refinance my house or whatever, then the deposit money is kept, according to us, in violation of TILA. Our point being that the delta — as a scientist would say, the difference between the two statute periods, which are really more procedural than substantive, is not anything other than incidental to the lending decision whether to keep the money or not. Okay. Okay, I'm over my — I'm sorry, Your Honor, I took too long. Thank you. Good morning. Douglas Lobel on behalf of E-Trade Mortgage Corporation, and may it please the Court. Whether they sit around and figure out they don't give this money back, they're not posing too great a risk because it's just a short statute limitation. No, Your Honor, I don't believe that's the case. Well, why didn't they give the money back? Well, Your Honor, I don't know — Isn't there a statute that requires them to do that? There is, Your Honor, and if — So they violated the law. Well, Your Honor, I — I mean, they've got all these lawyers around there charging them $1,000 an hour, giving them advice. You don't think some lawyer looked over that thing and realized what was going on and that a federal statute was also being violated for truth in lending? Your Honor, I will say only that if — the facts were not developed in this case because right from the outset we filed the motions to dismiss and the case was dismissed. If the facts as pled are true, then I think it would constitute a violation of the Truth in Lending Act, but I don't think it would constitute a violation of 17-200 for the reasons that we stated, because those claims are preempted. So while I'm not forgiving the actions if it occurred, I have represented the company for 10 years and I would say they are very honorable people, and if it occurred, I don't believe it would be intentional. Well, I don't know. I mean, we're involved in this subprime financial big problem. They're all pushing money on people. They are, Your Honor, as are really almost every other financial institution in the country, unfortunately, at this point. Yeah, yeah, that's right. Yeah, and I don't see any of them offering to give back all their profits. Well, Your Honor, I can't disagree with you, although I don't — Because they're dealing with people that are pretty naive anyway. They're not reading all that stuff, you know. You know, the average person, well, all right, so I got screwed out of $400. Forget about it. Go on to something else. Your Honor, I think — Some smart lawyer comes around and figures this out, and E-Trade has got, you know, hundreds of thousands of customers. You add that up to $100 more, and it's close to half a billion. I understand the court's sentiment, Your Honor, and what I would say is that these consumers are not without a remedy, and the remedy is the Truth in Lending Act. But, you know, that one year, just by the time people settle down, and they're not even thinking about all that. Does it say in that application you've got a one-year statute of limitations? I don't know if it does, Your Honor. I don't think so. Yeah. I think that — I mean, the purpose of these laws are to protect the borrowers, right? Yes, Your Honor. They're not there to protect the savings and loans. That's absolutely right. It's there to protect the borrowers. That's true. Yeah. All right. What are these letters all about? You've got a 96 letter and a 99 letter from the Office of Thrift Supervision, Department of the Treasury. Of what effect and value are those letters in interpreting 560? I think they're of great value, Your Honor. They are interpretive letters of the Chief Counsel. I believe they're entitled to Chevron deference by this Court, or at least something akin to that in an agency interpreting its own regulation. And they are significant because the 99 opinion determines that the UCL is preempted in the two areas that are relevant to this case, loan-related fees and advertising and disclosure. The 99 letter? Direct me in the 99 letter to the place where you say it targets the loan-related fees. Yes, Your Honor. It's a long letter. They do knock out the UCA insofar as it's dealing with precise areas brought to its attention in that situation. Loan-related fees is referred to on page 9 of that letter under C. Yes, Your Honor. That's what you're talking about? Yes, Your Honor. And then further on page 10 begins the discussion, and they conclude that the UCA or I think it was the UCL on page 14 advertising is preempted. But wait a minute. You've got two fees that are under examination here, demand statement fees and facsimile fees. Yes. The association A charges when a borrower pays off a mortgage loan in that lawsuit, blah, blah, blah, inflated demand statement. The plaintiff's complaint also asserts cause for breach of contract, et cetera, et cetera. And that's on page 16. Those aren't the same precise fees that we're talking about in your case, are they? No, they're not, Your Honor. Oh, they're not. That's right. And if you look at the cases in this area, there's a whole range of fees. There's fax fees. There's interest fees. There's delivery fees. There's all kinds of fees. And what's important is that they all fall within that sub B5 of the 560 regulation, loan-related fees. 60.25, loan-related fees. Yes. Including, without limitation, initial charges, late charges, prepayment penalties, servicing fees, and over-limit fees. Right, Your Honor. And so what I think that this Court needs to do in its analysis is just to simply look at the fee that appellant has sought to be refunded and determine, is that a loan-related fee under the section of sub 5? Does it fall within that? If it does, it's preempted. So, for example, appellants say they would like their UCL claim is for refund of this lock-in fee. Right. And Judge Noonan, when he drafted the Jones opinion three years ago, said that the lock-in fee is an integral part of the loan transaction and cannot be separated. So I think it's clear from that decision of the Ninth Circuit, as well as common sense, that a lock-in fee to lock in an interest rate is a, quote-unquote, loan-related fee, and therefore preempted by section B5. And when we look at Carolyn Buck, Chief Counsel's 1996 letter, she lays out an analytical approach. Yes, Your Honor. From analyzing the status of state laws under 562, the first step will be to determine whether the type of law in question is listed among the illustrative examples of preempted state laws in paragraph B of 562. If so, the analysis ends. Right. So your point is, if we take a look at what we're dealing with in this case and find that it falls within 560.25, the analysis ends. Absolutely. That's what I think all the court needs to do. Isn't a loan-related fee talking about points? Isn't that what most of us think about, is a loan-related fee? Well, Your Honor, I think that certainly would be one of them, but the language of the... I mean, yeah, that's what you think about. Yeah. How much is this loan going to cost me? Two points. Well, let's see. That's a lot of money. Right. I'll go someplace else. But... Well, the language of sub 5, though, Your Honor, is much broader than that. It says without limitation, initial charges, late charges, prepayment penalties, servicing fees, or over-limit fees. And there's a number of cases we cited that include fax charges. Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties. If you pay the loan off early, right? Yes. That's right. Yes, Your Honor. And over-limit fees, what's that mean? I don't know what that means, actually. You don't know what it means? Okay, you're in this business. So if I read loan-related fees, I'd think of points. Well, I would certainly think of points, Your Honor. But as I said earlier, I think if you look at that language, which is quite broad, it says without limitation, and you look at the Ninth Circuit's opinion in the related Jones case, there is a conclusion there that the lock-in fee is an integral part of the loan transaction. And therefore, I just think by virtue of the language and common sense, it's considered a loan-related fee. And Judge Trott, the 96 opinion is actually quite helpful in another area that the appellant has disputed, because that's an area where under the disclosure regulation, the disclosures the Indiana statute required were exactly identical to TILA. And the OTS said that that disclosure statute would be preempted, even though it was entirely congruent with TILA. There were no differences. And what they actually say in the footnote is while the preemption has little impact there because the borrower must comply with TILA, because the field is occupied, and that's on page 7, footnote 21 of the 96 opinion, Your Honor. Hold on, hold on, hold on. Because the Indiana law merely incorporates by reference. Yep. The practical effect of preemption in this instance would be negligible. Right. And that's one of the things that appellant has argued vigorously is that if there's – if it parrots the Federal law, then it's not preempted. And clearly the OTS disagrees on that. What the OTS is saying is that Congress has said in its wisdom that this field is preempted by the Federal lending authority and that any State law, even if it entirely parrots a Federal statute, shall be preempted. And as Ms. Buck said in her opinion that you read, that's the end of the inquiry. It shall go no further. I think that one of the ways that the appellant has gotten off base here is in doing – continuing to insist on a conflict analysis – preemption analysis here. There is no place for the States to regulate according to the Supreme Court case law on this. And the Ninth Circuit has held in both the Bank of America case and in the Stein case from 79 that this is field preemption and that the OTS occupies the field here. And the guidance from the OTS tells us you look at subsection B, in this case you would look at sub-5 and sub-9, and you would simply decide whether the claims attempt to regulate lending practices in those two areas. So, in other words, this panel should look at the question, do these 17200 and 17500 claims attempt to regulate or affect loan-related fees and regulate or affect disclosures? And I think that if you look at the complaint, it's very clear. The complaint makes comments about a standard form contract. It wants certain language about lock-in disclosure and agreement. It talks about customer disclosures on the website. And so what the appellant is saying here is it would like the State to come in and regulate the form of disclosures made in connection with these loan transactions. And that's precisely what the Congress and the OTS was seeking to prevent in promulgating 560.2. State laws that are not preempted. State laws of the following types are not preempted, to the extent they only incidentally affect the lending operations of Federal Savings and Loan Associations or are otherwise consistent with the purposes of paragraph A, contract and commercial law. Yes. Yeah, okay. That's true, Your Honor. That's not preempted. Real property law, that's not preempted. Homestead law, that's not preempted. Tort law, criminal law, any other law that OTS upon review finds furthers a vital State interest. That is true, Your Honor. It's not. It has only an incidental effect on lending operations or is not otherwise contrary to purposes expressed in paragraph A. Now, why isn't this just an incidental effect? Well, it's not, Your Honor, for $400. Your Honor, it's the Truth in Lending Act. It's lending regulation. It specifically attempts to regulate the disclosures in a lending transaction and the fees incurred in a lending transaction. It is the furthest thing from having an incidental effect on lending. It goes to the heart of the lending operation of a mortgage, the Truth in Lending Act. Is there a violation of Truth in Lending here? Your Honor, as I say, the facts on that have not been developed. The appellant alleges that there was, and I can't say for sure whether there was because the case never got to that stage. Where does this fit within the law? If your loan fails to close for any other reason, including your decision to cancel, the lock-in fee will not be refunded to you. Is that true? Well, Your Honor, that gets back to conversations Judge Noonan and I had three years ago on the Jones case, and we argued. I wasn't there. I know. Our argument was not accepted, but we argued that the obligation to refund all fees does not come into effect until the loan closes. In other words, before a loan closes, when you're simply in the application phase, there's no obligation to refund the money. Now, Judge Noonan disagreed with us, and the Jones opinion therefore holds that the lock-in fee was required to be refunded. I know in the Blue case, the Blue brief quotes Jones right after it talks about the form document provided by the appellant. Yes. Okay. Well, I do notice with interest that the Blue brief calls these lock-in deposits. I'm sitting here trying to figure out what a loan fee is in accordance with this preemption thing, and you call it a lock-in deposit, but the form itself calls it a lock-in fee. And it is a lock-in fee. It's a lock-in fee in connection with the loan. It's a fee that you pay if you close your loan. You pay a fee to lock in an interest rate, and that fee is kept and is part of the proceeds that the bank accepts as part of the transaction. I don't think there's any question that it's a lock-in fee. And so what the OTS counsels in their guidance is that all presumption should be to preemption in this instance because of the importance of field preemption. And the only way you even get to a subsection C analysis is if you conclude that none of the 13 subsections in B are implicated. And only then do you find it's not preempted if you find it's only incidental to lending. And I just suggest as a common-sense matter, when you're talking about the Truth in Lending Act, it's clearly an issue that involves lending. And it clearly is an attempt by a state statute to regulate the form of disclosures and the kinds of fees in a transaction. Let me just make one other point. This is a very real practical problem for financial institutions, and this is some of the points that the amicus made. If the court were to rule that every state, all 50 states, could come in and regulate the form of disclosures in lending documents that are provided in thousands of transactions every week, mortgage transactions, the impact on financial institutions, it would have to tailor their documents. Doesn't federal law require you to give that money back? It does, Your Honor. It does. So you're acting like your clients are white as snow. They're keeping money from poor people that they ought to give back to them under federal law. And sure, there's a short statute of limitations that was probably put in there through the lobbyists and all that. Poor people, people are trying to buy houses. They're not that sophisticated. They listen to advertising on the radio or television. I've seen a lot of those advertises from I think even this company. They do advertise, don't they? Yes, Your Honor. So they bring people in. People want a loan. And they say, well, you know, these interest rates are moving around. You can lock that in. But you've got three days, you know, because in three days it'll have to go up. The way things are moving. So maybe you want to do that. Okay. They put down their $400. And then whatever happens, they can't go through with it. So then you end up with $400 every time you sign somebody up on an application. Your Honor, I am not supporting the failure to comply with federal law. But what I am saying is it's the federal obligation to enforce that law. It's the federal statute that enforces that law. And that the Congress and the Supreme Court have said that states cannot come in and regulate in those areas because they want uniformity. Why doesn't that fall under the incidental effect? Well, Your Honor, as I said, because I think when you're dictating the kinds of disclosures that must be made. What would be an incidental effect? The examples of incidental effect are if I make a false defamatory report to a credit agency that you didn't pay your loan on time. That would be a tort that would not impact the lending activities of the financial institution. Your Honor, what would be a contract in commercial law? I'm looking at contract in commercial law. Yes. Incidental effect. Sure, if it's a tort law or if there's a crime committed in there, someone defrauds the bank that works in the bank, you know. Yes. That's the state can probably handle that and whatever. A tort law, if somebody walks in and they slip on these terrazzo tire tiles or a loose $100 bill on the floor, you know, that's tort law. Okay. Homestead laws, you know, we know you take subject to those. So what about contract in commercial law? Well, Judge Posner in the example of that. Sure, Judge Posner in the Seventh Circuit Ocwen case that was just decided, we submitted in supplemental 28J letter last week, gives an example where you have a lending contract where the bank's supposed to charge you 6% interest and they charge you 10% interest and they just outright violate the lending agreement, the contract between the borrower and the lender. He gives that as an example of that's potentially a contractual claim that a state may regulate because it doesn't affect the lending activities of the institution. It's just simply saying to the institution, if you agree on an interest rate, you must abide by it. Keep $400 that you're not supposed to keep. Why isn't that an incidental effect? Well, Your Honor, they didn't allege a breach of contract in this case. They alleged that we complied with the contract. And their case wasn't dismissed on the merits, was it? No, it was dismissed on preemption grounds, Your Honor. Preemption grounds. But the problem is that's not their theory. Their theory is that we did exactly what we said we were going to do. Their theory is that we said we wouldn't refund the money and we didn't. Their theory is not a breach of contract. It's a compliance with contract theory. And so they don't fall within that exception of C. Really, what their whole case goes to is we failed to make disclosures under federal law and we failed to give a feedback, and that, we think, falls within 5 and 9 clearly. I just want to make one other point, that the Stein case that the Ninth Circuit decided in 1979 says clearly that if even a state law that is entirely consistent with a federal law and adds no additional burdens is still preempted because Congress has occupied the field. What was the state law there? It had to do with a fair housing issue, actually, Your Honor. They wanted to come in, the California state wanted to come in and regulate some kind of fair housing issue, and the Ninth Circuit in that Stein case said that Congress occupied the field. Even though those obligations existed under federal law, that claim had to be preempted. There was no room for the states to operate within that preempted area. Nobody got taken for any money there, did they? Well, I don't know, Your Honor. Fair housing is obviously a serious issue to a lot of people, and I think the import of your question and my answer is that there are very serious consumer issues where the law is preempted and it's up to the federal government to make sure that the enforcement is zealous and adequate. And that's really all we're saying here. And that federally chartered savings and loans obey the law. Absolutely, Your Honor. And had you obeyed the law, you'd have given their money back. Well, again, Your Honor, I'm just not in a position to concede that we didn't, but what I would say is if we don't obey the law, the federal enforcement mechanisms... Regulators get you. I'm sorry? Regulators get you. The regulators get you and the private rights of action under TILA get you, but, again, they can only get you within a year. Do you have any idea how much this case is worth, as lawyers discuss? I mean, it's a supposed class action. How much money would be on the table? I actually think it's worth an extremely small amount of money because I think that the number of people that rescind their loans is extremely small. How many? I don't know, Your Honor, because, again... You don't know. You're just speculating. It could be thousands. Well, I know generally from working with the company that it's an unusual event for people to rescind their loans. I'm asking for something off the record, and I don't expect you to have a definitive answer. I can try to find out if you'd like. I just wanted to get a sense of it. I'll ask the other side the same thing. I like atmospherics for lawsuits. I understand. I've often thought that if there were a class in this case, and I think there are serious class issues, even if it were to come back, I think the class would be extremely small and possibly not even qualify as a class. That's hard to believe. Well, Your Honor, I don't think that my client engaged in a regular practice of not refunding lock-in fees. I don't think that's the case. Are you just overlooked here? I think if it happened, I think it might have been. Why don't you just give him his money back? Because that's not what they want. That's not what they want, Your Honor. That's not what they want. I'll try it. Will $400 settle this case? Your Honor, I think in the case of this particular claim, the $400 makes them whole. What did you say? We don't, on our side, we really don't have the answers to the questions of how widespread it is. The number of people affected, there are a lot of scenarios where customers don't follow through that are imaginable, such as an intervening drop further in rates after the line occurs, an alternative package with less points. Is that a long way of saying $400 won't settle the case? I think in the individual case under Rule 23, we could settle now individually for the plaintiff for his $400 if the defendant's position is we didn't violate the law, we went on the merits, and this plaintiff is not entitled to anything. The defendant's position is it's preempted. You don't have a case under state law, period. That is the… You were misstating the defendant's case, that's all. But I was responding to your honor's question about what the, is this case bigger than a breadbasket? Thank you. Thank you. Your honor's side asked. Yeah, sure, go ahead. I think in the 96 OTS opinion, which I believe is the one that deals with the Indiana Deceptive Trade Practices Statute, that's the one where the OTS does say that the use of the Consumer Protection Statute in Indiana, where there has been false representation of the loan transaction or what the rights are under the loan transaction, the application in that case of the Indiana Deceptive Trade, Deceptive Trade Practices Act, would only be an incidental effect because the underlying regulatory guts. True, but I looked at that more for the approach to the analysis, which is also in 61 Fed Reg 50966, and it says if it's covered by B, it's over. As an initial step, whether the courts are even open based on preemption. Yeah, the first step is to determine whether the type of law in question is listed under paragraph B. But then the issue is, if you look at our alleged violations in the two components, although in listening to the argument, there may actually be a third, because if the UCL also borrows contract claims and there was an action. Why don't you fall under five and nine? I mean, you very adroitly try to call it a lock-in deposit. The form itself calls it a lock-in fee, and it seems to be that it's a loan-related fee. I think, Your Honor, that if you look at the transaction from the perspective of what happens if it closes and the borrower actually closes the transaction, and then you try to follow the money, the point is that as a fee it disappears. It just becomes a credit. But it's still a fee. So what if it disappears? It's a fee that disappears. It's still a fee, and I can't figure out how you escape five. The answer is, Your Honor, that it is not a fee or charge. As Tila talks about, all the money that changes hands has to go back if the transaction is rescinded or canceled. It's not really a ‑‑ it's sort of putting up earnest money, sort of like a little hostage. You're getting real flabby here, but we take a look and see whether this is a loan-related fee. It just seems to me that it's a fee. But, you see, the federal ‑‑ You escape by five by saying, well, it's a different kind of a fee because it disappears. I think it's not that the federal law has said, Your Honor, we're going to have a fee or charge or whatever label you want to give it, but if a transaction doesn't close for any reason, whatever that fee or charge is, it goes back. Tila talks about all money that changes hands, everything being rescindable. Tila's fine. Tila's great. Use Tila. But where have ‑‑ it's sort of regulation by reservation. Having counsel litigated some of the earlier cases like Jones, and I have been counsel in some of the state cases like Gibson v. Washington Mutual and cases like the other ‑‑ I mean Gibson v. World Savings like the Washington Mutual case, that what Congress has said is in Tila and the feds as far as the OTS have never said anything inconsistent. Tila doesn't say it's not a fee. No, it doesn't talk about it as a fee. It simply says all money that changes hands in the transaction, the transaction is ripped up, and everybody goes back to where they were when they start. Including fees. Including fees. It could be fees, but is it a fee of the type of which the OTS has regulated or might regulate because it's some of the money up? It is not. It's a lock‑in. There's nothing in the OTS on up‑front deposits, probably because everyone assumed the lenders would comply with the federal Tila statute. I understand your argument. And so you can't really find anything in the OTS because it's not supposed to have existed in the world where Tila presumptively was complied with. And then if you look at the other dimension of the claim, which is going out to borrowers in the state and misrepresenting what their rights are. It just doesn't follow that, therefore, you can use a state law cause of action dealing with things that are unlawful and sort of pulls Tila in sideways to extend the statute of limitations for four years. But where is the ‑‑ when management makes the decision what to comply with, they're complying with the federal law. That's the decision. We will comply with Tila or take our risk if we don't. It's a state law. The statute of limitations is really just a procedural rule that evolved many years before. The short one for the federal statute and then the four‑year statute in 17200, way, way back in the 1930s. So we don't want to say that where there is a lender whose practice in the State of California, because this is a California‑only class, is to bring in borrowers under misrepresentation or deception with regard to the law, federal or state, that there is no state anti‑deception remedy. I think we understand your argument. Okay. I'm now going back over ground. Do your honors have any other questions? No. Because I'm over my time. Well, let me ask the counsel for e‑trade a question. I got the paragraph here.  Yes, sir. And it says here in your bold type, it says, accordingly, e‑trade cannot be allowed to subvert the rescission right, including the right to the return of all the property and money tendered it in this transaction. That is not permitted by TILA. And he's talking about the $400, right? Yes, your honor. Is your client obeying that? Absolutely, your honor. This is an event that goes back some four or five years. Yeah, but after Judge Noonan rendered this opinion, if ‑‑ It changed the landscape, I think. Did it change the landscape? Your honor, my client ‑‑ You know when people come in and say, I gave you the $400, I don't want to go through with it. Oh, that's all right. Here's your $400 and a pound of C's chocolates. They do that? I don't know about the chocolates, your honor, but respectfully my client has been obeying that long before Judge Noonan's opinion came out. We didn't need to wait to see Judge Noonan's opinion to change that. It was changed when this issue was ‑‑ Why don't you do it with these folks here? Well, again, your honor, I don't know the facts on this event. It goes back four or five years and we never got to that issue. But we're litigating the case at this point on the grounds of preemption. As I've said, we are subject to TILA and we obviously comply with it. We make every effort to comply with it. Okay. Can I make one last point? Yeah. I just wanted to make the point in terms of the impact on lenders. In addition to the difference in the statute of limitations, there's a very different difference in the damages allowed under TILA versus 17200 that we haven't discussed. That is that in a class action under TILA, there's a cap of $500,000 for the entire class, and under 17200 the disgorgement remedy is unlimited. So, Judge Trott, that's another area where the appellant is attempting to sort of import these state damage laws that have radical impacts on a financial institution. If you go from half a million dollar cap to unlimited damages, that's just in addition to the statute of limitations, I think a very important distinction. That's all I wanted to add. Thank you. Well, if you keep the money, it doesn't belong to you, so, you know. Judge Fragerson, I don't think we're doing that and I certainly hope that we're not doing that. I hope not, yeah. Thank you. I'll say this for you. You represent your client very well. Thank you very much. You can order copies of those statements and then your hourly rate can go up. I'm all for that. All right. Court will recess until 9 a.m. tomorrow morning. Thank you.
judges: Pregerson, Noonan, Trott